[No. 19701-4-II.   Division Two.   October 24, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN EUGENE ONG, *Appellant*.

*Charles D. Creason,* for appellant (appointed counsel for appeal).

*David H. Bruneau, Prosecuting Attorney,* for respondent.

ARMSTRONG, J. — A jury convicted Steven Ong of (1) second degree kidnapping, (2) delivery of a controlled substance to a person under 18 years old, (3) second degree burglary, and (4) taking a motor vehicle without permission. He appeals, claiming that, among other things, his convictions for kidnapping and delivery of a controlled

substance are not supported by sufficient evidence. We agree only as to the conviction and sentence for delivery of a controlled substance and reverse in part.

## FACTS

One morning, Steven Ong went to the house of his friend, Christina Sero, and asked to borrow a car. When Sero said she would first have to take her seven-year-old daughter, Christina, to school, Ong offered to do that for her. The school was four blocks away, and Ong had driven Christina there at least once before.[1] Sero also asked Ong if he could give Christina two dollars for a field trip. According to Sero, Ong said "he had it."

Ong and Christina left Sero's residence around 9:00 A.M. At 2:30 P.M., Sero learned that Christina had never arrived at school. At trial, the school principal testified that Christina was absent that day.

Sero immediately called the police. Charlene Barnes, Ong's mother, was also told, and she started looking for her son. Around 6:30 P.M., Barnes found Ong and Christina walking on East Sequim Bay Road. Barnes warned Ong that the police were looking for him,[2] drove him "a little ways" up the road, and returned Christina to Sero.

Ong testified that he had agreed to drive Christina to school and give her two dollars for the field trip. But because he kept his cash in a car near Chicken Coop Road, Ong drove there first. Ong explained that although he lived with his mother, he stored his "illegal things" in the car. When asked if "illegal things" included drugs, he said, "Um, that's a possibility."

Ong testified that his storage car is parked on a dirt logging road about one hour from Sero's residence. Sero characterized the area as wooded and remote. Ong called

[1]Sero testified that Ong had her permission only to drive Christina to school.

[2]During its cross-examination of Ong, the State asked if his mother had told him the police were looking for him. Ong replied: "Yes. They usually are."

it a "good hiding place" that the police did not know about. While driving on the logging road for two or three miles, Ong claimed the car got stuck in some mud. He spent an hour or so trying to extract the car, then the battery died.[3] At some point Christina complained of a headache. Ong gave her one-half of a white pill with numbers printed on it.[4] He believed the pills were pain medication, but he did not know if it was a prescription drug because he had stolen the pills from a friend.

Ong decided to walk to a friend's house to use his phone, although he admitted to passing several phones along the way. During the walk, Ong and Christina cut through some "rough terrain and Christina wasn't happy." After his mom picked up Christina, Ong walked around in the woods and came upon a house. He admitted to stealing some tools and a truck from the house.[5] He also admitted leaving at the home a blue bag containing a small blue "kit" with two and one-half tablets in a small plastic bag. The State's forensic scientist testified that the white tablets contained morphine, a "controlled substance." The kit also contained two syringes, a plastic straw, and a "homemade smoking device" with burnt residue. Deputy Charles Fuchser identified the items as drug paraphernalia.

Christina testified that Ong gave her one-half of a white pill that he got from a plastic sandwich bag. The pill tasted "[y]ucky" so she spit it out.

## ANALYSIS

### Sufficiency of the Evidence

▮▮▮ Ong contends that his convictions for kidnapping and delivery of a controlled substance are not supported by sufficient evidence. Evidence is sufficient to support a

---

[3]Sero testified that the car "had a weak battery."

[4]The State's forensic scientist later testified that the numbers indicated the type of drug and the manufacturer.

[5]He drove the truck to Bremerton where he was arrested.

conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Aten*, 130 Wn.2d 640, 666-67, 927 P.2d 210 (1996). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Lubers*, 81 Wn. App. 614, 618-19, 915 P.2d 1157 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)), *review denied*, 130 Wn.2d 1008 (1996). Circumstantial and direct evidence are equally reliable. *Lubers*, 81 Wn. App. at 619. And we defer to the trier of fact on the credibility of witnesses and the persuasiveness of evidence. *Lubers*, 81 Wn. App. at 619.

### A. Kidnapping

■ A person commits second degree kidnapping by intentionally abducting another person under circumstances not amounting to first degree kidnapping. RCW 9A.40.030(1). " 'Abduct' means to restrain a person by . . . secreting or holding him in a place where he is not likely to be found . . . ." RCW 9A.40.010(2). " 'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty." RCW 9A.40.010(1). "Restraint is 'without consent' if it is accomplished by . . . any means including acquiescence of the victim [under 16 years old] . . . and if the [victim's] parent . . . has not acquiesced." RCW 9A.40.010(1).

Sero testified that Ong had her permission only to drive seven-year-old Christina to school, four blocks from Sero's home. Instead, Ong drove Christina to a remote location he described as a "good hiding place" that the police did not know about.[6] This was a material deviation, both in time and distance, from the trip for which Ong had permission. Further, the jury could have found that the "good hiding place" was a place where Christina was not

---

[6]Sero apparently knew of the location, but she did not give Ong permission to take Christina there.

likely to be found. Finally, Christina was completely under Ong's control during the trip and the jury could have found that this substantially interfered with her liberty. We conclude that the evidence is sufficient to convict Ong of second degree kidnapping.

## B. Controlled Substance

■■ The State charged Ong with "knowingly distribut-[ing] by delivering a controlled substance, to wit: morphine, a narcotic drug, to a person under eighteen (18) years of age; in violation of RCW 69.50.401(a) & 69.50.406." The trial court's "to convict" instruction set forth the following element: "That the Defendant knew that the substance delivered was morphine." The State did not except. Because the State did not except to the "to convict" instruction, the instruction became the law of the case. *State v. Hunt*, 75 Wn. App. 795, 806, 880 P.2d 96, *review denied*, 125 Wn.2d 1009 (1994); *see State v. Salas,* 127 Wn.2d 173, 182, 897 P.2d 1246 (1995) ("Normally, if no exception is taken to jury instructions, those instructions become the law of the case."); *see also State v. Barringer*, 32 Wn. App. 882, 887-88, 650 P.2d 1129 (1982) (State assumed burden of proving unnecessary element in its proposed instructions), *overruled on other grounds by State v. Monson*, 113 Wn.2d 833, 849-50, 784 P.2d 485 (1989).

The State concedes on appeal that it assumed the burden of proving that Ong knew the substance he delivered was morphine. The State points to the following evidence: (1) Ong's five felony convictions;[7] (2) Ong's drug paraphernalia (i.e., syringes, a straw, smoking device, cotton); (3) the small numbers marked on the tablets; (4) his testimony that he knew the pills were "pain medication"; (5) his testimony that he stole the pills; (6) and his flight to Bremerton, showing consciousness of guilt. But nothing in this evidence points to knowledge that the substance was

---

[7]The court admitted only the number and dates of the felonies under ER 609. The mere existence of the felonies cannot support an inference that Ong knew the substance he delivered was morphine.

morphine rather than any other controlled substance.[8] Thus, even viewed in the light most favorable to the State, the evidence shows only that Ong knew the tablets were a controlled substance, not that the tablets contained morphine. Because the evidence is not sufficient to support the conviction, we must reverse it. *State v. Worland*, 20 Wn. App. 559, 568-69, 582 P.2d 539 (1978) (reversing drug conviction of codefendant because State failed to prove element it had proposed). We caution that our holding is limited to the law of the case doctrine. The issue of whether a defendant accused of delivering a controlled substance must know the specific drug being delivered is not before us. *See, e.g.,* WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 50.06, cmt. at 645 (2d ed. 1994) ("It is not clear whether the defendant must know that the substance was a specific substance or whether the defendant must know that the substance was a controlled substance.").

We reverse the conviction and sentence for delivery of morphine to a person under 18 years old and affirm the remaining judgment.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and HUNT, J., concur.

---

[8]Nearly 240 substances are listed in the Uniform Controlled Substances Act. RCW 69.50.