72 P.3d 748 (2003)
The STATE of Washington, Respondent,
v.
Collette S. DEVRIES, Petitioner.
No. 72251-0.
Supreme Court of Washington, En Banc.
Argued November 14, 2002.
Decided July 17, 2003.
*749 William Edelblute, Spokane, for petitioner.
James L. Nagle, Walla Walla County Prosecutor, Jill Peitersen, Deputy, for respondent.
CHAMBERS, J.
Collette S. DeVries, a juvenile in the ninth grade, was charged with the class B felony offense of knowingly delivering amphetamines to a fellow student, a violation of RCW 69.50.401(a)(1)(ii) of the Uniform Controlled Substances Act. She was convicted at a bench trial where the court improperly refused to hear closing arguments. The Court of Appeals reversed her conviction solely on the grounds of the trial court's violation of DeVries' right to present closing argument and did not address the evidentiary issues that she raised or her request for a new judge on remand.
DeVries sought review of four contentions not addressed by the Court of Appeals. First, whether the foundational requirements of identification and authentication were met for records admitted into evidence under the Uniform Business Records as Evidence Act (UBRA), chapter 5.45 RCW. Second, whether evidence of a prior act was improperly admitted under an exception to Evidence Rule (ER) 404(b). Third, whether the evidence was sufficient to convict. Fourth, whether remanding the case to the same judge is an appropriate remedy for the violation of DeVries' Sixth Amendment right.
Concluding the evidence is insufficient to convict, we reverse her conviction and dismiss the case with prejudice.

FACTS
DeVries was charged and convicted of knowingly delivering amphetamines after an incident with a classmate following a high school physical education class. A fellow classmate, Dieadera Mannen, testified at trial that DeVries gave her an "energy" pill and that after taking the pill she began to act irrationally, shake, and breathe hard. Report of Proceedings (RP) at 8-10, 13-14. Due to her irrational behavior and physical symptoms, Mannen was taken to an emergency room. The treating physician ordered a urine drug screen, which allegedly was positive for amphetamine.
Over DeVries' objections, the trial court admitted into evidence a copy of Mannen's urine drug screen laboratory report. The prosecution's witness, the emergency room physician who treated Mannen, testified by telephone and did not have a copy of the report before him or in his file.
The State offered testimony that DeVries had given two "energy" pills to another classmate, Melissa Bowden, three days before the incident for which DeVries was charged. Bowden testified that she felt "like really hyper" after ingesting the energy pill from DeVries. RP at 66. Bowden testified that the pills she received from DeVries looked different from the pill Mannen claimed to have received. The trial court admitted Bowden's testimony regarding the prior act, even though the descriptions of the pills in the two incidents were strikingly different and there was no evidence that the pills in the prior incident contained a controlled substance. *750 Neither Mannen nor Bowden, the two classmates who claimed to have received energy pills from DeVries, believed the pills were either dangerous or a controlled substance.
Walla Walla County Deputy Sheriff Humphreys, who interviewed DeVries after the incident as a part of his investigation, testified that DeVries denied any involvement with narcotics and told him she received four pills from a Spokane man.
At the conclusion of the evidence, the trial court rendered its decision without the benefit of summation:
I'm not going to ask for any closing arguments.... [C]ertainly I understand everybody's theory. I understand what the evidence is ... I feel that I have a basis and am in a position to give my decision.
RP at 155. The trial court then pronounced DeVries guilty. The Court of Appeals reversed, holding that the trial court erred by denying DeVries her Sixth Amendment right to have counsel make a closing argument. State v. DeVries, 109 Wash.App. 322, 324, 34 P.3d 927 (2001).
In addition, but without specifically addressing the evidentiary issues raised by DeVries, the court below concluded that the evidence presented at trial was sufficient to convict. DeVries, 109 Wash.App. at 324-25, 34 P.3d 927. It remanded the case for a new trial before the same judge. Id. at 325, 34 P.3d 927. DeVries sought review of the Court of Appeals decision on the unaddressed evidentiary and remedy issues. We granted review.

ANALYSIS

LABORATORY REPORT AND DOCTOR'S TESTIMONY
DeVries argues that the trial court abused its discretion in admitting the laboratory report of Mannen's drug screen because it was not properly identified and authenticated by the emergency room doctor as the report he saw on October 25, 1999 while treating Mannen. We agree.
The UBRA provides an exception for business records to the general hearsay rules. RCW 5.45.020. This court has interpreted the UBRA as applying to medical records and has set forth criteria to ensure the reliability of these records. See State v. Ziegler, 114 Wash.2d 533, 538-40, 789 P.2d 79 (1990). While the UBRA is a statutory exception to hearsay rules, it does not create an exception for the foundational requirements of identification and authentication. 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.42, at 23 (4th ed.1999). A trial court's decision to admit records under the act is reviewed for a manifest abuse of discretion. Ziegler, 114 Wash.2d at 538, 789 P.2d 79.
In this case, exhibit 1 was a laboratory report of the urine test, which the State contended was from the victim, Mannen. The State introduced the report through the emergency room doctor, who testified by phone. Critically, the doctor did not have a copy of the report before him to consult while testifying. He could not say that the report he had seen previously on October 25, 1999, while treating Mannen, was the same one that the prosecution sought to admit. The identification of exhibit 1 was further confused by the prosecutor's repeated reference to the exhibit as a blood test. Mannen did have a blood test but it was only the urine test that was screened for drugs.
Because the exhibit was not properly identified and authenticated by a witness, it was a manifest abuse of discretion for the trial court to admit it into evidence.[1]
It is possible that upon a proper foundation the doctor could have offered an opinion as to the condition for which he treated his patient. But that is not the question before us. The doctor was never asked for his *751 expert opinion. The trial judge, perhaps frustrated by persistent foundation objections of defense counsel, asked the critical question himself:
THE COURT: You can go ahead tell us what the drug screen said.
A. It was positive for amphetamines.
RP at 90.
The trial court abused its discretion in admitting the laboratory report without proper foundation.[2]

EVIDENCE OF PRIOR ACT
DeVries challenges the court's admission of evidence under ER 404(b) that DeVries gave two pills to Bowden a few days before the incident involving Mannen. The court stated the prior incident showed DeVries knew the pill given to Mannen was a controlled substance even though the pills were not the same. Bowden testified the pill she took was a soft capsule, while Mannen testified the pill she took was hard.
Evidence can be admitted under ER 404(b) only if the trial court finds the evidence serves a legitimate purpose, is relevant to prove an element of the crime charged, and, on balance, the probative value of the evidence outweighs its prejudicial effect. State v. Lough, 125 Wash.2d 847, 853, 889 P.2d 487 (1995). In doubtful cases, the evidence should be excluded. State v. Smith, 106 Wash.2d 772, 776, 725 P.2d 951 (1986). There was no evidence the prior pills were a controlled substance or that the pills were the same. The prior incident had little or no probative value on the elements of the crime charged and it should have been excluded.

SUFFICIENCY OF THE EVIDENCE
DeVries challenges the sufficiency of the evidence relied upon by the trial court to find that she had a controlled substance and knowingly delivered a controlled substance. Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. State v. Green, 94 Wash.2d 216, 222, 616 P.2d 628 (1980). As the United States Supreme Court noted, it is critical that our criminal law not be diluted by a standard of proof that leaves the public to wonder whether innocent persons are being condemned. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "`"[T]he reasonable-doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue."'" State v. Hundley, 126 Wash.2d 418, 421-22, 895 P.2d 403 (1995) (quoting Winship, 397 U.S. at 364, 90 S.Ct. 1068).
The State charged DeVries with knowingly delivering a controlled substance, in violation of RCW 69.50.401(a).[3] The necessary elements of the crime are (1) delivery of a controlled substance, and (2) knowledge that the substance delivered was a controlled substance. RCW 69.50.401(a)(1)(ii); State v. Hernandez, 85 Wash.App. 672, 675, 935 P.2d 623 (1997).
*752 The State was required to plead and prove that DeVries knew that she was delivering a controlled substance.[4]State v. Nunez-Martinez, 90 Wash.App. 250, 255, 951 P.2d 823 (1998). Several young women, all classmates of the accused, testified to the incident which occurred that day at Columbia High School in Walla Walla.[5] No eyewitness, including Mannen, gave any testimony suggesting DeVries referred to the pill as a controlled substance or an illegal drug. In fact, no eyewitness to the incident reported hearing DeVries refer to the pill as anything other than an "energy" pill. Each denied that anyone referred to the pill given to Mannen as an amphetamine, methamphetamine, speed or any street name for amphetamine.[6] One witness, Megan Hoover, recalled DeVries telling Mannen the pill could "mess you up" and that "something bad could happen to her if she reacted to it in a different way." RP at 42. Hoover also testified that someone had said the pills had made someone else "horny." RP at 44.
The trial court found the statements of Hoover sufficient to infer the pills were a controlled substance and DeVries knew they were a controlled substance. The court reasoned:
[M]ore important, was statements attributed to the defendant that I think it was Debra Hoover, that said that the defendant told [Mannen], no, you shouldn't take this. This will mess you up. That tells me that the defendant knew this was dangerous of some sort. And I think from that one can certainly make an inference that if it's going to mess you up you shouldn't take it. That number one, it's dangerous, and number two, it may well be a controlled substance.

RP at 159 (emphasis added).[7]
Deputy Humphreys offered equivocal evidence that, in an interview with him, DeVries referred to the pill as "ecstasy":
THE COURT: Let's clarify. You say you don't have it in your notes, and it doesn't say there. What you are about to say, is this a personal recollection? Do you remember what she said?
A. [HUMPHREYS] It could be after speaking with so many different people. I'm not sure if it is her exactly that said it or one of the other.
RP at 76.
As the trial judge acknowledged, the deputy's testimony was "weak":[8]
[I]s there some circumstantial evidence that ... she knew this had to be a controlled substance. I find there was. Admittedly it is circumstantial. Well, I'm not even sure about that. The officer, I have to admit, his testimony was a little weak that somebody was talking about this being Ecstasy. He finally ended up saying I think it was she that said that ... he was not real sure.
RP at 159.
Despite the lack of evidence that the energy pill DeVries gave Mannen was ecstasy, the trial court found the evidence regarding ecstasy supportive of the State's claim that DeVries knew the pill she gave Mannen was a controlled substance:
Giving some validity to the Ecstasy claim, ... I think it was [Hoover] that said there was some reference to this is going *753 to "make you horny." Well, that ties in with Detective Bolster that this has got a reputation, Ecstasy that is, for being some kind of sex drug. So that seemed that's consistent with this being the drug, Ecstasy. I don't buy at all that people wouldn't know that Ecstasy is a controlled substance. Anybody that knows anything knows that Ecstasy is a controlled substance.
RP at 159-60. The trial court supplemented Deputy Humphreys' testimony with Hoover's testimony that someone said the pills made someone else "horny" to find DeVries knew the pill was ecstasy.[9]
Finally, the trial court concluded DeVries knew the pills were a controlled substance because Deputy Humphreys testified DeVries changed her story about how many pills she had. DeVries initially said that there was just one pill and later acknowledged she had four pills. The court stated:
I think the other thing that convinced me, circumstantially, that the defendant knew this was a controlled substance was that she changed her story with the officer.... If she honestly thought this wasn't a controlled substance she would have had no reason to say right out, yeah, I had these pills. I thought they were an energy pill or vitamin pill or something. I think her hesitancy to admit she had these pills to me is circumstantial evidence. She knew this was a controlled substance. So I find the defendant guilty.
RP at 160.
No witness testified that any one referred to the pills given to Mannen as anything other than an energy pills. The evidence supporting the conclusion that DeVries knew she was delivering a controlled substance is as follows:
One witness's testimony that DeVries said the pill could "mess you up," that "something bad could happen to [Mannen] if she reacted to it in a different way," and that the pills had made someone "horny," RP at 42, 44;
Deputy Humphreys' testimony that DeVries or someone else had called the pill ecstasy; and
Evidence that at first DeVries said she had no pills, and then said she had one pill, and later four pills.
We conclude, based on this evidence, no rational trier of fact could find beyond a reasonable doubt that the pill DeVries gave to Mannen was a controlled substance or that DeVries knew the pill was a controlled substance.[10]

CONCLUSION
We hold there was insufficient evidence to find beyond a reasonable doubt that DeVries knowingly delivered a controlled substance. As a result, DeVries was convicted without proof beyond a reasonable doubt in violation of the fourteenth amendment to the United States Constitution. The Court of Appeals is reversed to the extent it held the evidence was sufficient. A defendant whose conviction has been reversed due to insufficient evidence cannot be retried. State v. Anderson, 96 Wash.2d 739, 742, 638 P.2d 1205 (1982) (citing Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)).[11]
Accordingly, we remand the case for dismissal with prejudice.
*754 ALEXANDER, C.J., and JOHNSON, SANDERS, IRELAND, BRIDGE, OWENS, JJ., and SMITH, J.P.T., concur.
MADSEN, J., (concurring/dissenting).
I agree with the majority that the trial court incorrectly admitted Ms. Dieadera Mannen's laboratory report because the State failed to lay a proper foundation for the report. I also agree that evidence of a prior bad act was improperly admitted under ER 404(b). However, the majority fails to correctly apply the appropriate standard of review in evaluating the defendant's challenge that the remaining evidence, properly admitted, was not sufficient to support a conviction. In a sufficiency challenge the reviewing court must view the evidence in the light most favorable to the State. Instead, the majority offers alternative interpretations and explanations of the evidence that are viewed most favorably to the defense, thereby improperly substituting its judgment under an improper standard of review. I respectfully dissent.

Discussion
Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). It is not the place of the reviewing court to offer possible explanations or theories on the evidence presented; "when the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977). A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. State v. Green, 94 Wash.2d 216, 222, 616 P.2d 628 (1980). When applying this standard of review to the evidence at hand, a straightforward chain of events unfolds from which a rational trier of fact could find beyond a reasonable doubt that DeVries knowingly delivered a controlled substance to Mannen, thus satisfying the elements of the crime charged.
The first element of the crime of delivery of a controlled substance is delivery. RCW 69.50.401(a)(1)(ii); State v. Hernandez, 85 Wash.App. 672, 675, 935 P.2d 623 (1997). The testimony of a person who receives delivery, corroborated by a witness to the transaction is sufficient to establish that a delivery occurred. State v. Eddie A., 40 Wash.App. 717, 720, 700 P.2d 751 (1985). Ms. Dieadera Mannen testified that DeVries gave her a pill, and Megan Hoover, an eyewitness, corroborated that testimony.
The next element that the State must prove is that the substance delivered was a controlled substance. Lay testimony and circumstantial evidence may be sufficient to establish the identity of the substance involved in an alleged drug transaction, In re Personal Restraint of Reismiller, 101 Wash.2d 291, 294, 678 P.2d 323 (1984), and such circumstantial proof may include evidence that the substance produced the effects attributable to the controlled substance in question. See Reismiller, 101 Wash.2d at 294-95, 678 P.2d 323. The controlled substance allegedly delivered in this case was amphetamines. The State here presented evidence that common symptoms of amphetamine use are restlessness, elevated heart rate, elevated blood pressure, running or racing mind, shaking and diminished concentration. Report of Proceedings (RP) at 99. Mannen testified that within 15 minutes of taking the pill "things started to get hazy and blurry and I started to get dizzy. I started to feel like my body was going numb. I couldn't feel anything." RP at 10. Her classmates testified that she "seemed really excited, and she was shaking." RP at 43. Mannen's symptoms grew as the day progressed and when paramedics arrived her heart rate was "sky rocketing," she was "breathing really hard" and shaking. RP at 14.
In addition to lay testimony, a witness who demonstrates an expertise acquired either by education or experience in this area may give an opinion as to the identity of a substance. Hernandez, 85 Wash.App. at 676, 935 P.2d 623. The State offered the testimony of Dr. *755 Davis for identification of the substance that Mannen ingested. Dr. Davis has extensive experience in treating patients who have ingested amphetamines. RP at 97-98. As Mannen's treating physician, Dr. Davis testified about his diagnosis and treatment of Mannen. "[T]he thing I remember about her most was she was kind of out of sorts, anxious, restless and somewhat irrational, thrashing about a bit. And she had a little high pulse and elevated blood pressure." RP at 86. Based on his initial observations, Dr. Davis believed that Mannen had injested drugs and in particular, amphetamines, confirming his diagnosis. RP at 87-88. He ordered a urine drug screen and the results were positive for amphetamine.
Although the urine drug screen report was improperly admitted into evidence, the treating physician was not precluded from testifying as to its contents. As the trial judge correctly stated,
a physician is able to testify on whatever source. It often comes from other sources, blood tests, etcetera and we don't have to have the original documents in. The purpose is that he is trying to explain why he did what he did, and there was some sort of a drug screen and I'm going to allow him to testify to it.
RP at 88-89. The trial judge's ruling is supported by the Fed.R.Evid. Advisory Committee's Note to Fed.R.Evid. 703 (Washington's ER 703 is identical):
[A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X-rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.
Fed.R.Evid. 703 Advisory Committee Note; Paul D. Rheingold, The Basis of Medical Testimony, 15 Vand. L.Rev. 473, 531 (1962). The trial judge made clear that Dr. Davis was testifying as to his diagnosis and treatment of Mannen, and based on that understanding instructed the doctor to testify to the results of the drug screen. The majority may contend that because the doctor was never specifically asked for his expert opinion, the testimony was improper. Majority at 5. However, when "it is clear from the context that [the witness] was expressing [his] opinion[,] the precise form of the testimony is unimportant." State v. Worland, 20 Wash.App. 559, 565, 582 P.2d 539 (1978). Dr. Davis's testimony and the questions asked by both parties clearly show that he was there testifying as an expert witness. RP at 85-102. Defense counsel made this evident by presenting Dr. Davis with a hypothetical situation and asking him his opinion as to what could be expected to occur. RP at 95.
The testimony offered by the State provides sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that there was a delivery of a controlled substance.
Finally, for conviction, the State must prove knowledge that the substance delivered was a controlled substance. RCW 69.50.401(a)(1)(ii); Hernandez, 85 Wash.App. at 675, 935 P.2d 623. Guilty knowledge is intrinsic to the definition of the crime itself and must be shown. State v. Boyer, 91 Wash.2d 342, 344, 588 P.2d 1151 (1979). However, the guilty knowledge required by Boyer is not knowledge of the substance's exact chemical or street name, it is simply knowledge that the substance is some type of controlled substance. State v. Nunez-Martinez, 90 Wash.App. 250, 951 P.2d 823 (1998). The jury is permitted to find knowledge if there is sufficient information which would lead a reasonable person to believe that a fact exists. State v. Johnson, 119 Wash.2d 167, 174, 829 P.2d 1082 (1992). Circumstantial evidence is no less reliable than direct evidence; specific criminal intent may be inferred from circumstances as a matter of logical probability. State v. Zamora, 63 Wash.App. 220, 223, 817 P.2d 880 (1991).
Deputy Humphreys testified that "to the best of my knowledge, each time it (the pill) *756 was brought up by Collette, when I was speaking with her, it was called Ecstasy." RP at 77. Ecstasy is listed as a Schedule I hallucinogen, making it a controlled substance in Washington. RCW 69.50.204(c)(7). The trial judge found that while the deputy's testimony was weak and standing alone would probably not have been sufficient to establish knowledge, it was still a factor in his deliberation. RP at 159. The majority dismisses this testimony as "equivocal." Majority at 10 n. 9. However, when reasonable inferences are drawn in favor of the State, a rational trier of fact could find that DeVries knew or believed the substance was ecstasy, a controlled substance.
Knowledge of the substance or its effects, method of procuring the substance, and actions suggesting consciousness of guilt are also factors to be considered in making a determination of guilty knowledge. See State v. Ong, 88 Wash.App. 572, 577, 945 P.2d 749 (1997).
Testimony offered by the State illustrated that DeVries had knowledge of the pills and their effects. Mannen testified that DeVries called the pills "energy pills" and said that when she felt tired she takes them and they give her lots of energy. RP at 11. When Mannen asked DeVries why she was feeling the way she was, DeVries responded that it was normal and that it would wear off. RP at 11. Megan Hoover testified that she overheard DeVries tell Mannen that "it could mess you up, you know, you shouldn't take it," and also that "something bad could happen to her if she reacted to it in a different way." RP at 42. This testimony offers evidence that DeVries was familiar with the pills, was aware that they were dangerous, and knew what they could do to Mannen.
Deputy Humphreys testified that DeVries told him that she had received four pills from a man named Paul in Spokane and that she would not or could not give anymore information as to who this Paul person was. RP at 75. The manner of procuring the pills and DeVries' refusal to give more information about "Paul" also supported an inference that DeVries knew the pills were "controlled."
DeVries' guilty knowledge is additionally suggested by the manner in which she changed her story when interviewed by Deputy Humphreys. First, DeVries indicated she had no knowledge of any narcotics. After further questioning by Humphreys she admitted that she had one pill, and later admitted to having received four pills from "Paul." RP at 75. It is reasonable to infer guilty knowledge from false statements given to a police officer.

Conclusion
Reviewing courts must give deference to the trier of fact who resolves conflicting testimony, evaluates the credibility of witnesses, and generally weighs the persuasiveness of evidence. State v. Walton, 64 Wash. App. 410, 415-16, 824 P.2d 533 (1992). This required deference is illustrated by the standard of review to be applied in cases questioning the sufficiency of the evidence: evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt. When the facts of the present case are considered in accordance with the correct standard, they show the following: (1) DeVries delivered a pill to Mannen; (2) within minutes of taking the pill Mannen developed symptoms consistent with amphetamine use; (3) Dr. Davis preliminarily diagnosed Mannen's symptoms as drug induced; (4) in his expert capacity, he relied upon and testified that the urine test confirmed the presence of amphetamine; (5) DeVries was familiar with the pills and had knowledge of their effects; and (6) DeVries acted and spoke in a manner indicating her knowledge that the pills were a "controlled substance." Based on this evidence a rational trier of fact could find all elements of the charged crime were proved beyond a reasonable doubt.
I respectfully dissent.
NOTES
[1] We note that the relevance of exhibit 1 is significantly undercut because the victim testified that, on the day of the incident, she had taken two medications for allergies. The emergency room doctor testified Mannen had also been given a tranquilizer at the emergency room before the drug screen. While the physician testified that he would not expect an interaction between amphetamines and the allergy medication, there is no testimony to indicate how those medications would affect the urine test.
[2] The dissent contends that the doctor was allowed to insert into evidence the results of the urine screen under ER 703 because such results are customarily relied on by those in his field. However, the doctor never testified to those foundational requirements of ER 703. Evidence of the urine screen was offered under RCW 5.45.020, the business records exception to the hearsay rules, not ER 703. "`While Rule 703 permits an expert witness to take into account matters which are unadmitted and inadmissible, it does not follow that such a witness may simply report such matters to the trier of fact: The Rule was not designed to enable a witness to summarize and reiterate all manner of inadmissible evidence.'" State v. Martinez, 78 Wash.App. 870, 880, 899 P.2d 1302 (1995) (quoting 3 David Louisell & Christopher Mueller, FEDERAL EVIDENCE § 389, at 663 (1979)).
[3] (a) Except as authorized by this chapter, it is unlawful for any person to ... deliver ... a controlled substance.

(1) Any person who violates this subsection with respect to:
. . . .
(ii) amphetamine ... is guilty of a crime....
RCW 69.50.401(a).
[4] DeVries was charged with delivering an amphetamine. Whether the State carried the burden of proving that she knew she was delivering an amphetamine or simply any controlled substance was not raised and is not before this court, and we express no opinion on this issue. Similar issues have been raised in lower courts. But cf. State v. Hickman, 135 Wash.2d 97, 954 P.2d 900 (1998) (applying the law of the case doctrine); State v. Ong, 88 Wash.App. 572, 945 P.2d 749 (1997) (same).
[5] Dieadera Mannen, Megan Hoover, Melissa Bowden, and Corina Graden.
[6] Cf. Mannen (RP at 17, 34-36), Hoover (RP at 45), Bowden (RP at 68), Graden (RP at 146).
[7] We note that what the court said about DeVries' energy pills applies just as easily to many nonprescription substances as well as doctor-prescribed medications, which high school students presumably understand may produce adverse reactions. A warning would be reasonable regardless of how benign the medication being shared with a friend is.
[8] The word "ecstasy" does not appear in Humphreys' notes or report and no statement was taken from DeVries.
[9] The dissent finds support in Deputy Humphreys' testimony concerning ecstasy. Dissent at 6. Humphreys' testimony that DeVries called the drug ecstasy was equivocal at best. Moreover, the relevance of such testimony is questionable. DeVries was charged with delivering an amphetamine. The drug known as "ecstasy" is a different drug than an amphetamine. Ecstasy or MDMA (3, 4-methylenedioxymethamphetamine), is listed as a Schedule I hallucinogen. RCW 69.50.204(c)(7). Amphetamine is a Schedule II nonnarcotic stimulant. RCW 69.50.206(d)(1).
[10] Even if we were to add to our consideration the improperly admitted evidence that DeVries had passed out different pills before and that one student may have had amphetamine in her urine, we still find the evidence insufficient that DeVries was knowingly distributing controlled substances. Cf. State v. Neal, 144 Wash.2d 600, 611, 30 P.3d 1255 (2001).
[11] Because we dismiss with prejudice, we do not address DeVries' argument that the case should not have been remanded for trial before the same judge.