[No. 40085-5-II.    Division Two.    August 9, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN M. DILLON, *Appellant*.

*John A. Hays*, for appellant.

*Anthony F. Golik, Prosecuting Attorney*, and *Anne M. Cruser, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Steven Dillon appeals his convictions for second degree child rape and first degree kidnapping with sexual motivation, arguing that (1) the trial court should have suppressed his confession because the police violated the "knock and announce" rule when they entered his apartment to arrest him, (2) the trial court erred when it failed to directly answer a jury question during deliberations, (3) he was denied his right to present exculpatory evidence on the reasonableness of the victim's age, (4)

insufficient evidence supports the kidnapping charge and the jury's finding that he was a predator, and (5) the finding of a sentencing enhancement violated his right to be free from double jeopardy. Because the State failed to prove the kidnapping charge, we reverse that conviction and vacate the associated enhancement. And because the trial court failed to make findings of fact and conclusions of law on whether the "knock and announce rule" was violated, we retain jurisdiction of the remaining issues on appeal and remand for the trial court to do so.

## FACTS

¶2 Sometime before August 2008, L.M., a 13-year-old male, registered for a local Portland telephone chat service.[1] Under the alias "Chance," L.M. recorded an introductory profile message. When signing up for the chat service, L.M. represented that he was 18 years old because of the service's requirement that users be at least 18 to participate.

¶3 Dillon used the same chat service under the user name "Dalton." Report of Proceedings (RP) at 475. After listening to L.M.'s profile message, Dillon left a phone number and asked "Chance" to call him. RP at 478-79. L.M. testified that he called Dillon three times on the evening in question.[2] During one of their conversations, Dillon invited L.M. to come to his Vancouver apartment. L.M., who lives in Portland, responded that he did not have a car and asked Dillon to pick him up.

¶4 Dillon picked up L.M. around midnight at an intersection near L.M.'s house in Portland. They drove back to Dillon's home and went into his bedroom, where a pornographic movie was playing. Dillon asked L.M. to perform oral sex on him and L.M. complied. Dillon then performed

---

[1] A telephone chat service is essentially a membership-based dating service.

[2] Phone records showed 15 calls from L.M. to Dillon.

oral sex on L.M. Dillon phoned his girlfriend, stating that he wanted to have a threesome. After a brief sexual contact with L.M., the girlfriend left.

¶5 L.M. asked if Dillon would take him home. Dillon implored L.M. to stay longer, but L.M. declined. Dillon drove L.M. back to the same intersection in Portland where he had picked him up.

¶6 When L.M. returned home, his older sister called their mother at work to report that L.M. had been out. L.M.'s mother confronted him about where he had been and, not satisfied with his answers, called the police. A police officer had L.M. take him to Dillon's apartment in Vancouver. The police officer knocked on the door and entered the apartment with Dillon's consent. Dillon provided identification and the officer left.

¶7 Although L.M. initially denied a sexual encounter with Dillon, he eventually provided two written statements in which he conceded that he had sexual contact with Dillon. On the basis of these statements, the police obtained a search warrant for Dillon's apartment. When they arrived at the apartment, the police knocked on the front door, announced their purpose, and entered after a few seconds. Once inside, they arrested Dillon and seized several items from the apartment.

¶8 Dillon told the police that he met L.M. through a chat service, they agreed to meet at a Portland location suggested by L.M., they returned to Dillon's apartment and engaged in consensual oral sex, and he had taken L.M. back to Portland at L.M.'s request.[3] He also told the police he believed L.M. was at least 18 because L.M. repeatedly represented he was 18 years old, a person had to be 18 to use the chat service, and L.M. had claimed that he worked full time at a nursing home.

---

[3] This part of the confession was deemed admissible at trial. However, after two-and-a-half hours of questioning, the officers taped the remaining half-hour of the interrogation. This portion of Dillon's statement was excluded from trial. Neither decision is at issue on appeal.

¶9 The State charged Dillon with second degree child rape and first degree kidnapping.[4] In addition, the State alleged that the rape was predatory, that the kidnapping was sexually motivated, and that at the time of the kidnapping, the victim was less than 15 years old.

¶10 Dillon moved to suppress all the evidence seized from his apartment, contending that the search warrant relied on information that the police impermissibly obtained during their initial visit.[5] At the hearing, one of the officers testified that when the police arrived at Dillon's apartment the second time, they executed the search warrant by knocking on the door, announcing their presence, and entering a few seconds later. In response to this testimony, Dillon filed an amended motion to suppress the evidence on the basis that the police violated the "knock and announce" rule. The trial court denied the first motion to suppress, ruling that the police had sufficient evidence to obtain the search warrant without considering anything they learned in the first visit. The trial court then denied the amended motion to suppress without hearing argument on whether there was a violation of the "knock and announce" rule.

¶11 The trial court also limited the evidence regarding L.M.'s representations of his age to the public, including web site profiles where he stated he was 18. The court ruled that only those representations made directly to Dillon were relevant to show the reasonableness of Dillon's belief that L.M. was at least 18 years old, a key element of his affirmative defense to the rape charge.

---

[4] RCW 9A.44.076 provides that a person is guilty of child rape in the second degree when the person has sexual intercourse with another who is at least 12 years old *but less than 14 years old* and not married to the perpetrator and the perpetrator is at least 36 months older than the victim.

[5] Dillon claimed the police violated the "knock and talk" rule—different from the "knock and announce" rule—under *State v. Ferrier*, 136 Wn.2d 103, 115, 960 P.2d 927 (1988). The "knock and talk" rule requires that when an officer seeks consent to search a home without a warrant, he must inform the person consenting that he may lawfully refuse consent or limit the scope of the search at any time.

¶12 The trial court instructed the jury without objection or exception from either party. During deliberations, the jury asked for clarification of the affirmative defense to child rape. The court responded that the jury was the sole judge in determining what weight to give testimony. The jury found Dillon guilty of child rape as a predatory offense. The jury also found him guilty of kidnapping a victim under the age of 15 with sexual motivation. The trial court sentenced Dillon to 300 months' confinement.

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE: KIDNAPPING

¶13 Dillon contends that insufficient evidence supports his conviction for first degree kidnapping. Specifically, Dillon argues that the State failed to prove two essential elements of the kidnapping charge: (1) that he restricted L.M.'s movements and (2) that the action was taken without consent. Rather, he contends that L.M. voluntarily got into his vehicle and voluntarily entered his apartment.

¶14 In considering a challenge to the sufficiency of the evidence, we construe the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A defendant who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *Salinas*, 119 Wn.2d at 201.

¶15 A conviction for first degree kidnapping requires the State to prove beyond a reasonable doubt that Dillon intentionally abducted L.M. with the intent to facilitate the commission of a felony. Former RCW 9A.40.020(1)(b) (1975);[6] *State v. Billups*, 62 Wn. App. 122, 125, 813 P.2d 149

---

[6] The State specifically charged Dillon with first degree kidnapping under former subsection (1)(b).

(1991) (noting that the kidnapping statute requires a person to act with the specific intent to abduct). Under the statute, "abduct" means to "restrain a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force." Former RCW 9A.40.010(2) (1975). And "restrain" means to "restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty." Former RCW 9A.40.010(1) (1975). Restraint is "without consent" if it is "accomplished by . . . any means including acquiescence of the victim," if he is a child less than 16 years old. Former RCW 9A.40.010(1).

¶16 A child is abducted when restrained in areas or under circumstances where it is unlikely those persons directly affected by the victim's disappearance will find the child. *State v. Stubsjoen*, 48 Wn. App. 139, 145, 738 P.2d 306 (1987). But the definition of "restraint" involves both the restriction of the victim's movements and the lack of consent. Moreover, by the plain terms of the statutory definition, the restriction of movement must substantially interfere with the victim's liberty. Former RCW 9A.40-.010(1). "Substantial" means "a 'real' or 'material' interference with the liberty of another as contrasted with a petty annoyance, a slight inconvenience, or an imaginary conflict." *State v. Robinson*, 20 Wn. App. 882, 884, 582 P.2d 580 (1978). Thus, even if a child victim acquiesces to being taken or held by a defendant, there must be some evidence that the defendant in fact limited the victim's liberty.

¶17 It is undisputed that the State proved the "without consent" element of the restraint by virtue of L.M.'s age. The issue is whether the evidence is sufficient to show that Dillon intentionally and substantially interfered with L.M.'s liberty. The State relies on *Billups* to support its theory that restraint, and therefore abduction, occurred when L.M. entered Dillon's vehicle and Dillon drove away. In *Billups*, 62 Wn. App. at 124, the defendant offered two young girls a dollar to accompany him in his car. Although

the girls did not enter the car, the defendant was convicted of attempted second degree kidnapping. *Billups*, 62 Wn. App. at 124. The court concluded that by enticing the girls to enter into his van, the defendant took a substantial step to commit the crime, and had the girls complied, their movements would have been restrained by their presence in the van. *Billups*, 62 Wn. App. at 126-27. But unlike the instant case where there is no evidence that Dillon intended to restrain L.M., the *Billups* court inferred from his actions the defendant's criminal intent to restrain and secrete the girls, namely his offer of money to the girls. *Billups*, 62 Wn. App. at 127; *see also State v. Missmer*, 72 Wn.2d 1022, 1026-27, 435 P.2d 638 (1967) (substantial evidence must exist that defendant intended to conceal child).

¶18 The State also relies on *State v. Ong*, 88 Wn. App. 572, 945 P.2d 749 (1997). There, although the defendant had permission to drive the victim to school, the defendant exceeded the scope of his permission by driving to a different location. *Ong*, 88 Wn. App. at 576. In affirming the second degree kidnapping conviction, we held that the victim was completely under the defendant's control and the jury *could* have found that this substantially interfered with her liberty. *Ong*, 88 Wn. App. at 577. But central to our reasoning was the fact that the defendant's actions were a material deviation from the trip for which he had permission. *Ong*, 88 Wn. App. at 576.

¶19 Here, there is no evidence to infer that L.M.'s liberty was compromised, or that Dillon intended to restrict L.M.'s movements. In contrast to *Billups* and *Ong*, Dillon did not lure L.M. into the car, or take him anyplace other than the intended destination. Even assuming that L.M. was somewhat restrained when he got into Dillon's car, it is pure speculation that Dillon would have refused to let L.M. get out of the car or return him to the rendezvous point anytime he wanted. *Cf. Billups*, 62 Wn. App. at 127 (court inferred criminal intent to abduct the young girls from defendant's enticement); *Ong*, 88 Wn. App. at 576 (defendant's deviation

from permitted trip supported the inference that he intended to restrain victim). The only other place where Dillon could have restricted L.M.'s liberty was at Dillon's apartment, but when L.M. asked Dillon to take him home, Dillon complied. Because the State presented no evidence that Dillon intended to restrain L.M., or that he actually interfered with L.M.'s liberty, it failed to prove first degree kidnapping. Accordingly, we remand to dismiss with prejudice. And because we reverse Dillon's kidnapping conviction, we must also vacate the corresponding sentencing enhancement.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK, A.C.J., and HUNT, J., concur.