IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34744-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TODD ROBERT MICHAL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Does the driver of a truck unlawfully imprison a known runaway fifteen-year-old girl when the waif hides in the passenger area of the truck? Because no evidence showed that Todd Michal would have prevented the teenager from exiting the car if she requested, we answer in the negative and reverse Todd Michal's conviction for unlawful imprisonment. In so ruling, we disagree with our sister division's holding in *State v. Billups*, 62 Wn. App. 122, 813 P.2d 149 (1991), but agree with our second sister division's holding in *State v. Dillon*, 163 Wn. App. 101, 257 P.3d 678 (2011).

FACTS

This appeal concerns Todd Michal's relationship with fifteen-year-old Wendy Oldham, a pseudonym. Oldham walked two blocks to Spokane's Ferris High School from her grandmother's residence during the morning of October 23, 2014. Contrary to

the grandmother's and Oldham's parents' expectations, Oldham did not return to the grandmother's home that afternoon. The parents and grandmother did not see or speak to Oldham again until January 25, 2015, when Oldham called her grandmother and casually asked for a ride home. In the interim, Oldham's father notified the Spokane Police Department of his missing daughter.

Wendy Oldham's parents divorced before October 2014, although the two remained on amicable terms. Neither parent suspected the other parent of secreting Oldham between October 23, 2014 and January 25, 2015. During this window of time, Oldham's mother suspected that her daughter cohabitated with defendant Todd Michal, who resided in Deer Park. We do not know the basis of her suspicion. Neither parent at any time bestowed permission for Oldham to visit or ride in a car with Todd Michal.

After phoning her grandmother on January 25, Wendy Oldham relocated to Bonners Ferry, Idaho, to live with her mother and attend Bonners Ferry High School. On February 27, Oldham left her mother's residence for a walk and disappeared again. Oldham's mother suspected Oldham of returning to Todd Michal's home, and the mother reported Oldham as a runaway to Boundary County, Idaho, law enforcement authorities. Someone also reported Oldham as a disappeared teenager to Spokane County authorities along with Oldham's mother's suspicion that Oldham stayed with Michal.

Spokane County Sheriff's Detective Jeffrey Mitchell phoned Spokane County Sheriff's Deputy Alan Rollins and requested Rollins visit Todd Michal. Deputy Rollins

2

went to Michal's residence, and then Rollins arranged a telephone conversation between Michal and Detective Mitchell. Mitchell asked Michal if he knew of Wendy Oldham's whereabouts. Michal denied knowledge of Oldham's location and suggested she may be at a former boyfriend's home. Michal expressed a desire to avoid the presence of Oldham.

During the telephone call, Detective Jeffrey Mitchell warned Todd Michal that he may face criminal charges if law enforcement found Oldham in his custody. Mitchell referenced "harboring a runaway." Report of Proceedings (RP) at 117. Harboring a minor constitutes a crime under certain circumstances, including sheltering the minor and failing to disclose the location of the minor to law enforcement upon being requested to do so. RCW 13.32A.080. We do not know whether any facts garnered under investigation would prove the crime against Michal. The State did not charge this crime.

During the telephone conversation, Detective Jeffrey Mitchell instructed Todd Michal to contact law enforcement if Michal learned of Oldham's location. No testimony established that Mitchell informed Michal of Oldham's age. Deputy Alan Rollins traveled to the former boyfriend's home and did not find Oldham present at the home.

On March 19, 2015, Spokane County Sheriff's Deputy Daniel Dutton patrolled Deer Park and its vicinity at night when he spotted Todd Michal driving his truck. Deputy Dutton identified Michal's vehicle from earlier encounters. Dutton knew that law enforcement suspected Michal of harboring Wendy Oldham. Dutton stopped Michal and

3

approached the driver's side door. He then noticed a passenger lying down on the truck's front bench seat. One could not have seen the passenger unless standing and peering into the truck.

Deputy Daniel Dutton asked Todd Michal to identify his passenger, and Michal answered only with Wendy's first name. Wendy Oldham confirmed her full name with Deputy Dutton. Dutton phoned dispatch to confirm Oldham's runaway status, and Dutton then took Oldham into custody. During the stop, Michal gave no indication to Deputy Dutton that he intended to return Oldham home, but instead declared that he planned to drive Oldham to the Bob Mart so she could call her mother. Michal, nevertheless, possessed a cell phone.

## PROCEDURE

The State of Washington charged Todd Michal with one count of child molestation in the third degree, one count of unlawful imprisonment, and one count of commercial sexual abuse of a minor. The charges stemmed from the events occurring between October 23, 2014, and March 19, 2015. At the commencement of trial, the trial court granted the State's motion to dismiss counts one and three without prejudice, but denied the State's motion to sever because Michal did not consent to severance. After a bench trial, the trial court convicted Michal of unlawful imprisonment.

The trial court entered the following conclusions of law:

> 4. Neither this statute nor the cases interpreting it . . . require the

4

No. 34744-3-III
*State v. Michal*

State to prove that the defendant knew W.E.O. [Wendy Oldham] was under 16 years of age;

5. . . . even if she acquiesced to the confinement, W.E.O. was restrained for purposes of the statute because she was inside the defendant's vehicle and because the vehicle was moving (making it unsafe to exit);

6. The Court concludes beyond a reasonable doubt that on or about March 19, 2015, the Defendant restrained the movements of W.E.O. in a manner that substantially interfered with her liberty, that the restraint was accomplished by any means, including acquiescence, that W.E.O. was a child under [the] age of 16 years, that neither her parents or guardians acquiesced to that restraint, that the restrained occurred without lawful authority, that the defendant acted knowingly as to these elements (with the exception of the victim's age). . . .

Clerk's Papers (CP) at 54.

## LAW AND ANALYSIS

On appeal, Todd Michal challenges the sufficiency of evidence to convict him of unlawful imprisonment. He contends that the trial court heard insufficient evidence to find that he knowingly restrained Wendy Oldham. He also contends that the trial court legally erred when concluding that he did not need to know Oldham was under the age of sixteen.

We identify two discrete and primarily legal questions on appeal. First, does the accused, for purposes of unlawful imprisonment, substantially restrict a passenger's liberty when he transports the passenger in a moving motor vehicle? On appeal, the State does not contend that Todd Michal restrained Wendy Oldham at any time other than during the vehicular travel on March 15. Second, must the accused know the alleged victim to be under the age of sixteen to convict him of unlawfully imprisoning a minor

5

because he lacks permission from the minor's parents to hold the minor in his care? Because we answer the first question in the negative, we do not address the second question.

Todd Michal couches his argument in terms of insufficient evidence supporting his conviction. He claims the State lacked evidence that he substantially interfered with Wendy Oldham's liberty. Michal presented no testimony at trial. Therefore, the facts on appeal are essentially undisputed. The question on appeal is whether those facts constitute a "restraint" within the meaning of the crime of unlawful imprisonment.

We review the trial court's conclusion of law that Michal restrained Oldham within the meaning of the unlawful imprisonment statute. An appellate court reviews the trial court's conclusions of law de novo. *Sunnyside Valley Irrigation District v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). Because we focus on the trial court's conclusions of law, we do not review the rules of sufficiency of evidence, beyond recognizing the principle that we construe the evidence in the light favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We move directly to the substantive law and decide whether the facts and their nuances establish unlawful imprisonment.

This appeal requires an interpretation of two criminal statutes, RCW 9A.40.010 and .040. The meaning of a statute is a question of law that this court reviews de novo. *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

The court's fundamental objective when determining a statute's meaning is to ascertain and implement the legislature's intent. *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). When construing a statute, we consider the natural and contextual meanings that attach to a term, giving words their usual, ordinary, and commonly accepted meaning. *State v. Manlove*, 186 Wn. App. 433, 441, 347 P.3d 67 (2015). We must strictly construe a penal statute against the state. *State v. Thompson*, 38 Wn.2d 774, 779, 232 P.2d 87 (1951).

One commits the crime of unlawful imprisonment when one "*knowingly restrains* another person." RCW 9A.40.040 (emphasis added). This appeal concerns the nature of restraining another person. The criminal code defines "restrain" as:

> "Restrain" means to *restrict a person's movements* without consent and without legal authority in a manner which *interferes substantially with his or her liberty*. Restraint is "without consent" if it is accomplished by . . . any means including *acquiescence of the victim, if he or she is a child less than sixteen years old* or an incompetent person and *if the parent*, guardian, or other person or institution having lawful control or custody of him or her *has not acquiesced*.

RCW 9A.40.010(6) (emphasis added). The essence of unlawful imprisonment is *restraint* and *restriction*. *State v. Thomas*, 35 Wn. App. 598, 603, 668 P.2d 1294 (1983). The defendant must restrict the victim's movement and substantially interfere in the victim's liberty. The law does not differentiate between the two concepts of restricting movement and interfering with liberty.

7

A substantial interference is a "real" or "material" interference with the liberty of another as contrasted with a petty annoyance, a slight inconvenience, or an imaginary conflict. *State v. Robinson*, 20 Wn. App. 882, 884, 582 P.2d 580 (1978), *aff'd on other grounds*, 92 Wn.2d 357, 597 P.2d 892 (1979). Presumably the term "real" in this context does not mean the opposite of unreal, but instead highlights that run of the mill restrictions of passage in everyday life, such as bumping into a coworker in the hall, does not constitute a crime.

In analyzing whether the State proved a restraint, we ignore the age of Wendy Oldham. The age is only important as to the separate question of whether the State showed a lack of consent. Even if Wendy Oldham remained in the presence of Todd Michal without Oldham's parent's consent, the State must still prove that Michal restricted Oldham's movement in a manner that interfered substantially with her liberty. *State v. Dillon*, 163 Wn. App. at 107 (2011).

In deciphering and dissecting what constitutes a restraint, a restriction of movement, or a substantial interference with liberty, we adopt the mindset of a layperson, not the mentality of a judge, prosecutor, or defense counsel. We recognize that a vehicle's passenger, in a strict, physical, and legal sense, experiences a restriction of movement. But the common understanding of a restriction of liberty or an interference with movement runs counter to this technical view of "restraint."

The State postulates that Todd Michal restrained Wendy Oldham because Michal

8

could have prevented Oldham from exiting the car. If Oldham requested to leave the truck, Michal could have continued the forward movement of the truck so as to render Oldham's egress from the truck unsafe. Nevertheless, the State presented no evidence that Wendy Oldham did not wish to travel inside the truck or that she felt constrained inside the truck. The State presented no testimony that Michal compelled Oldham to enter the truck or forced her to remain inside the truck. The State presented no evidence that Oldham ever asked Michal to slow the truck so that she could exit the vehicle.

*State v. Billups*, 62 Wn. App. 122 (1991), issued by Division One of this court, diverges from our probe of a common sense understanding of "restraint" and interference with liberty. We do not fault the trial court for its ruling because the ruling followed the teaching of *Billups*. Leon Billups invited two girls, ages ten and eleven, to enter his van by offering them one dollar. The girls wisely fled and reported Billups' conduct. The State charged Billups with and convicted him of two counts of attempted kidnapping in the second degree. To convict Billups, the State needed to prove that Billups sought to "restrain" the girls as defined in RCW 9A.40.010(6). Division One affirmed the conviction.

The principal question in *Billups* on appeal was whether Leon Billups took significant steps to be convicted of an attempt to commit a crime. Nevertheless, in a passage that indirectly addresses what constitutes a "restraint," the court wrote:

By offering the girls a dollar if they would go to Shilshole with him,

9

> Billups sought to entice the girls into his van. If the girls had complied, their movements would have been restrained by their presence in the van, and the restraint would have been "without consent" as they were both under age 16 and no parental consent had been given. *See* RCW 9A.40.010. Once they were restrained in the van, Billups would have been secreting or holding the girls in a place where they were not likely to be found. *See* RCW 9A.40.010(2). Thus, Billups' efforts to entice them into the van constituted a substantial step.

*State v. Billups*, 62 Wn. App. at 126-27.

We disagree with the terse analysis of "restraint" in *State v. Billups*. The analysis ignores the practicalities of vehicular traffic and the household meanings of "restraint," "restriction," and "liberty." The faulty reasoning of the *Billups* opinion comes to light when one considers four hypotheticals. First, Betty retrieves her child George from school. George asks his mother to give a ride also to the neighbor boy, Fred. Fred's parents expected Fred to walk home from school. The parents may have given permission if asked, but the parents never consented to Betty chauffeuring Fred home. If Betty allows Fred to ride in the car, Betty restrains the movement of Fred and commits the crime of unlawful imprisonment. Second, fifteen-year-old runaway Donald hops on a city bus to travel from the right side of town to the wrong side of town. Once the bus driver places the bus in first gear, if not earlier when closing the door, the driver unlawfully imprisons Donald because Donald's parents never granted the driver permission to ferry their son. Third, James, the Hilton Hotel elevator operator, permits eleven-year-old Evan ingress into the elevator. Since Evan's parents expected Evan to

10

climb the four flights of stairs to the hotel room, James commits unlawful imprisonment. Fourth, a hotel guest enters the elevator and asks James for the twelfth floor. James mistakenly presses the thirteenth floor button. James restrains and unlawfully imprisons the guest once the elevator passes floor twelve.

We need not follow the decisions of other divisions of this court. *State v. Schmitt*, 124 Wn. App. 662, 669 n.11, 102 P.3d 856 (2004). Therefore, we chose not to follow Division One's opinion in *State v. Billups*.

*State v. Dillon*, 163 Wn. App. 101 (2011), issued by Division Two of this court, supports our reasoning. The trial court convicted Steven Dillon of first degree kidnapping, which includes the element of "abducting" in addition to "restraining." "Abducting" includes secreting a person in place where he is likely not to be found. RCW 9A.40.010(2). After meeting Chance, a thirteen-year-old boy, in an Internet chat room, Dillon retrieved Chance from a downtown intersection and drove Chance to his home. This court reversed Dillon's conviction on the basis that the State failed to show any restraint. Despite Chance sitting as a passenger in Dillon's moving car, the State presented no evidence to infer that Dillon compromised the boy's liberty or intended to restrict the boy's movements. In contrast to the facts in *Billups*, Dillon did not lure Chance into the car or take him anyplace other than the intended destination. The court wrote in contrary to the teaching of *Billups*:

> Even assuming that [Chance] was somewhat restrained when he got

11

into Dillon's car, it is pure speculation that Dillon would have refused to let [Chance] get out of the car or return him to the rendezvous point anytime he wanted.

*State v. Dillon*, 163 Wn. App. at 108.

*State v. Washington*, 135 Wn. App. 42, 143 P.3d 606 (2006), with its disparate facts, illustrates when an accused unlawfully imprisons the victim by restraining the victim's movement inside a car. After an angry altercation, Guy Washington ordered his wife, Harmoni, into the car. She entered the car, but left the passenger door open. Washington instructed Harmoni to shut the door. She tried to leave, but he grabbed her clothing and yanked her back inside the car. Washington then punched Harmoni in the stomach, choked her, and bashed her head against the window. He reached across the car and pulled the passenger door shut. This court affirmed the conviction of unlawful imprisonment. Harmoni's brief act of independence in leaving the car triggered Washington's acts of rage. Washington reacted to Harmoni's resistance to the restraint. The facts reported in the decision do not indicate whether Washington drove the car, but we consider any movement of the car after the assault to constitute a restraint. Washington captured Harmoni inside the car. Our appeal contains no facts showing that Todd Michal similarly restrained Wendy Oldham inside the car.

Foreign decisions affirming convictions for unlawful imprisonment or a related crime, such as criminal confinement or unlawful restraint, entail the defendant employing threats or force to confine the victim inside a car or a refusal to stop a car when

12

requested. In *Stephens v. State*, 10 N.E.3d 599, 602 (Ind. Ct. App. 2014), the defendant ignored the victim's repeated pleas to let her out of the car, refused to stop the car, and instead grabbed her phone and removed its battery. In *State v. Jason B.*, 111 Conn. App. 359, 361, 958 A.2d 1266 (2008), the victim repeatedly sought to exit the car, but each time the defendant grabbed her by the arm and pulled her back. In *State v. Youngs*, 97 Conn. App. 348, 351, 904 A.2d 1240 (2006), after professing his love for the victim, the defendant dragged her into his vehicle and then employed the automatic door locks to prevent the victim from exiting the car. Finally, in *State v. Ricchetti*, 74 Ohio App. 3d 728, 729, 600 N.E.2d 688 (1991), the defendant did not stop his vehicle when the victim requested that he do so and instead continued to flee from the police.

We recognize that this appeal contains bad facts. Law enforcement warned Todd Michal not to secrete Wendy Oldham. Michal ignored the warning and likely harbored an underage, impressionable, and vulnerable drifter. Oldham's burying of her body inside the truck signals that Michal and Oldham understood their conduct as wrongful, if not criminal. But a guilty conscience does not prove the commission of a crime. Bad conduct also does not equate to criminal behavior. We do not approve of Todd Michal's conduct, but conclude that he did not commit unlawful imprisonment.

Based on the facts of the appeal, one might also ask if Todd Michal "knowingly" restrained Wendy Oldham. We need not address this question.

No. 34744-3-III
*State v. Michal*

CONCLUSION

We vacate the conviction of Todd Michal and remand the case to the superior court for dismissal of the charges against Todd Michal for unlawful imprisonment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

14