

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  40988-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELIJAH COLLIER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — A jury found Elijah Collier guilty of burglary in the first degree while armed with two firearms.  Mr. Collier appeals, arguing the State failed to prove the essential elements of the crime and the firearm enhancements.  We disagree and affirm.

BACKGROUND

In November 2022, Mr. Collier was hired by James Kirkland, owner of AAA Allstar Movers & Cleaners (AAA), to complete a job at Robert Goodman's[1] house.

---

[1] Because Robert Goodman and Ross Goodman share the same last name, we refer to them by their first names for clarity.  No disrespect is intended.

Robert's son, Ross Goodman, hired AAA to move furniture out of his father's house so new carpeting could be installed. AAA tasked Mr. Collier with returning the furniture to the house after the new carpet had been installed. While onsite, Robert showed Mr. Collier a few of his cars and other collectable items.

In early December 2022, officers from the Fircrest Police Department were called to Robert's home to investigate a reported burglary. Robert's garage door had been damaged, and two antique rifles were reportedly missing.[2] On December 6, 2022, a Ring camera recorded an individual prying a garbage door open and then fleeing. Detective John Roberts compared a photograph of Mr. Collier to the image of the suspect captured on the Ring camera footage. Detective Roberts found Mr. Collier matched the "height, build, and general description" of the person in the video recording. Rep. of Proc. (RP) (July 16, 2024) at 3053.

Mr. Collier was eventually charged with burglary in the first degree and attempted burglary in the second degree. The State also alleged that Mr. Collier was armed with two firearms during the commission of the burglary in the first degree. Brandon Gillespie, Mr. Collier's friend, was also charged with burglary in the first degree, and the two cases were joined for trial. In advance of trial, the State reduced Mr. Gillespie's

---

[2] The record is unclear as to the exact date the rifles were stolen.

charge to theft in the third degree in exchange for his guilty plea to the charge and his promise to testify at Mr. Collier's trial. Mr. Collier's case proceeded to a jury trial.

At trial, Ross testified that his father's garage was "broken into" and two of his father's rifles, along with other property, were stolen. RP (July 16, 2024) at 3006. After the burglary, Ross installed a Ring camera that faced the garage. A couple of weeks later, on December 6, 2022, the Ring camera recorded an individual using "some sort of crowbar-type device that pried and broke the door open." RP (July 16, 2024) at 3009-10. The individual then "got spooked and walked off." RP (July 16, 2024) at 3010.

Mr. Kirkland testified that Ross hired AAA to move furniture from his father's house into pods and then back into the house after new carpeting was installed. Mr. Kirkland hired his friend, Mr. Collier, to assist in moving Robert's furniture back into the house. The State played the Ring recording for Mr. Kirkland during his testimony. Thereafter, Mr. Kirkland identified the house depicted in the recording as Robert's and the individual in the recording as Mr. Collier. Based on previous interactions with Mr. Collier wearing a full mask during the COVID-19 pandemic, Mr. Kirkland was able to recognize him in the video by his "bushy eyebrows." RP (July 16, 2024) at 3043.

Detective Roberts testified that he interviewed Mr. Collier in December 2022. Mr. Collier told Detective Roberts that Robert gave Mr. Gillespie two rifles for mechanical work Mr. Gillespie had completed for Robert. Mr. Gillespie then gave one of the rifles to Mr. Collier. Detective Roberts testified that Mr. Collier had earlier told him that he had

3

purchased the rifle.  Detective Roberts also testified that Mr. Collier's and Mr. Gillespie's fingerprints were found on a vehicle in Robert's garage.

Mr. Gillespie testified that Mr. Collier contacted him in November 2022, and asked "if [he] wanted to go hit a lick with him."  RP (July 17, 2024) at 4006.  Mr. Gillespie agreed, and the duo traveled to Robert's house.  Mr. Gillespie testified that once there, Mr. Collier "went and got the door open, and then he came back and grabbed me, and then we went in."  RP (July 17, 2024) at 4007.  Mr. Gillespie admitted they took tools, and Mr. Collier "grabbed [the rifles]" and rolled "them up in a floor mat that was in the garage."  RP (July 17, 2024) at 4008.  Mr. Collier then drove the pair back to his house where they divided the stolen property, including the rifles.

Mr. Collier testified that he worked for AAA for approximately four years.  He admitted to completing a job for AAA at Robert's house and to Robert showing him his cars.  Robert mentioned to Mr. Collier that he wanted to swap the engines of two vehicles.  Knowing that Mr. Gillespie needed work, Mr. Collier put Robert and Mr. Gillespie in contact with one another.  Mr. Collier testified that Mr. Gillespie gave him an "amazing deal" on a "beautiful engraved rifle" shortly after the two met.  RP (July 16, 2024) at 3527.  Mr. Collier claimed he was not the individual depicted in the Ring recording.  He testified that it may have been Mr. Gillespie in the recording and that he had previously told Detective Roberts he thought Mr. Gillespie may have stolen the rifles.

4

The jury ultimately found Mr. Collier guilty of burglary in the first degree and not guilty of attempted burglary in the second degree. The jury also returned two special verdicts on the burglary in the first degree charge, finding Mr. Collier was armed with a "Pump Action Winchester Repeating Arms Model 90-22 Long Rifle" and a "Winchester Model 94-39 Lever Action Rifle" during the commission of the burglary. Clerk's Papers (CP) at 296-97.

Mr. Collier appeals to this court.

ANALYSIS

On appeal, Mr. Collier argues the State failed to present evidence sufficient to prove the elements of burglary in the first degree and the firearm enhancements. Specifically, Mr. Collier contends that the State failed to present evidence that he entered or remained unlawfully in the garage and, for purposes of the firearm enhancements, that he was armed with a deadly weapon while in the garage or immediate flight therefrom. We disagree.

The sufficiency of the evidence is a question of law this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In a sufficiency of the evidence challenge, "we review the evidence in the light most favorable to the State to determine 'whether . . . any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). "A claim of insufficiency admits

5

the truth of the State's evidence and all inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). We can infer criminal intent from the defendant's conduct, and circumstantial evidence and direct evidence carry equal weight. *Varga*, 151 Wn.2d at 201. However, "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

Mr. Collier argues the evidence admitted at trial was insufficient to support the burglary in the first degree conviction because the State failed to prove he entered or remained in Robert's garage.

To convict Mr. Collier of burglary in the first degree, the State was required to prove that Mr. Collier (1) "entered or remained unlawfully in a building;" (2) "[t]hat the entering or remaining was with the intent to commit a crime against a person property therein;" (3) "[t]hat in so entering or while in the building or immediate flight from the building [he] was armed with a deadly weapon;" and (4) "[t]hat any of these acts occurred in the State of Washington." CP at 314; RCW 9A.52.020.

In reviewing the evidence in a light most favorable to the State, the evidence admitted at trial was sufficient to prove the elements of burglary in the first degree. Mr. Gillespie testified that Mr. Collier contacted him and asked if he "wanted to go hit a lick

with him." RP (July 17, 2024) at 4006. Mr. Gillespie described the "lick" as burgling

Robert's garage. RP (July 17, 2024) at 4006. Mr. Gillespie testified that when they

arrived at Robert's house, Mr. Collier "went and got the door open, and then he came

back and grabbed me, and then we went in." RP (July 17, 2024) at 4007. In response to

the State's question, "What did you guys do after you got into the home?" Mr. Gillespie

clarified, "[W]e only went into the garage, but we basically just, you know, started, you

know, going through stuff and then just grabbing whatever, you know, we wanted or felt

like, you know, we could make money off of." RP (July 17, 2024) at 4007.

Based on Mr. Gillespie's testimony, any rational trier of fact could have found

beyond a reasonable doubt that Mr. Collier entered or remained unlawfully in Robert's

garage. Thus, sufficient evidence supports Mr. Collier's conviction for burglary in the

first degree.

Mr. Collier next contends insufficient evidence was presented to prove the firearm

enhancements. Specifically, Mr. Collier argues that no evidence was admitted that he

possessed firearms while entering the garage, remaining in the garage, or in immediate

flight from the garage.

In reviewing the evidence in a light most favorable to the State, the evidence

admitted at trial was sufficient to prove that Mr. Collier possessed two firearms while in

Robert's garage and in immediate flight therefrom. Mr. Gillespie testified Mr. Collier

"acquired a couple rifles" from an unlocked safe in Robert's garage. RP (July 17, 2024)

7

at 4008. Mr. Gillespie witnessed Mr. Collier roll the rifles up in a floor mat while in the garage. The two then departed and later divided the loot, each retaining one rifle.

Based on Mr. Gillespie's testimony, any rational trier of fact could have found beyond a reasonable doubt that Mr. Collier possessed the rifles while in Robert's garage or in immediate flight therefrom. Thus, sufficient evidence supports the firearm enhancements.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Murphy, J.

_____
Hill, J.

8