## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52439-2-II |
| Respondent, | |
| v. | |
| ISAAC JOHN GUSMAN, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Isaac John Gusman appeals his bench trial conviction for attempted second degree kidnapping. He challenges the sufficiency of the evidence. Because the evidence was sufficient to support a finding that Gusman attempted to abduct the victim by restraining the victim in a place she was not likely to be found, we affirm Gusman's conviction.

Gusman also challenges the trial court's imposition of a criminal filing fee and appointed counsel costs. The State concedes that these should be stricken from the judgment and sentence. We accept the State's concession and remand to the trial court to strike the criminal filing fee and the appointed counsel costs and to amend the judgment and sentence accordingly.

No. 52439-2-II

FACTS

I. BACKGROUND FACTS[1]

A. THE INCIDENT

At about 8:15 PM, on the evening of May 16, 2018, 21 year old Ann Marie Shuck was walking home from work alone when a pickup truck pulled over and stopped in front of her. Shuck had seen the truck earlier while on her way home.

Gusman, who was unknown to Shuck, got out of the truck and walked toward the back of the truck. As he approached Shuck, Gusman "said something about having a flat tire." Clerk's Papers (CP) at 75. Gusman then "opened the passenger side door, grabbed . . . Shuck and held her such that she was unable to leave, and told her to get in the truck." CP at 75. Shuck later testified that Gusman "shoved what she believed felt like a handgun into her left rib cage area after pulling at the waistband on his shorts with his right hand." CP at 75.

Shuck fell to the ground and started to scream. Gusman also fell. Gusman then "jumped up," climbed into the truck through the open passenger side door, and drove away. CP at 76. Several people living nearby heard Shuck's screams, and one of them saw the truck drive away. After Gusman drove away, Shuck ran home and called 911.

---

[1] The background facts are based on the trial court's unchallenged findings of fact, which we consider verities on appeal. *State v. Bonds*, 174 Wn. App. 553, 562, 299 P.3d 663 (2013).

Officer Elliott Nelson responded to the 911 call and contacted Shuck at her home a few minutes later. Shuck described the incident and stated that the man who attacked her "told her to 'get in the f[***]ing truck,' grabbed her, and pressed what she believed was a gun into her side." CP at 76. She also provided a physical description of the man. Shuck later identified Gusman in a photo lineup assembled by Officer Nelson.

B.  INVESTIGATION AND ARREST

Officers distributed a flyer containing a description of the truck and "a composite drawing of the suspect" asking the public to provide any information. CP at 77. Amber Nixon saw the flyer and contacted the police when she realized she had had "an encounter" with the same vehicle on May 16. CP at 77.

Nixon reported that she had been out jogging in a wooded area in the "late afternoon" when she came upon the truck stopped at an intersection. CP at 77. The truck approached her and the driver appeared to ask her something about a street that was nowhere nearby, so Nixon continued running. When the truck did not leave immediately, Nixon attempted to memorize its license plate number. Nixon told her husband about the truck when she returned home. Later that week, Nixon's husband saw what he believed to be the same truck and contacted law enforcement.

On May 22, Lieutenant Brad Johansson of the Grays Harbor County Sheriff's Department found Gusman at a campsite "located on a spur road off a logging road in a heavily wooded area" and took him into custody. CP at 78. "The campsite had a four-foot high wall of logs and rock built around it." CP at 78. Gusman told Lieutenant Johansson "that Ms. Shuck had slapped his baseball hat and that he had burned the hat because it gave him bad memories." CP at 77-78.

3

II. PROCEDURE

The State charged Gusman by amended information with first degree kidnapping and second degree assault. The State alleged that Gusman had intentionally abducted Shuck "with intent to the facilitate commission of the felony of Rape in the Third Degree, Incident Liberties, Unlawful Imprisonment, and/or Assault in the Second Degree and/or flight thereafter."[2] CP at 20. Gusman waived his right to a jury trial, and the case proceeded to a bench trial.

After hearing the testimony and argument, the trial court issued written findings of fact and conclusions of law. The trial court's written findings of fact are described above.

In its "conclusions of law," the trial court concluded that Gusman did not abduct or attempt to abduct Shuck by using or threatening to use deadly force and that the State had not established that Gusman's "intent was to facilitate the commission of the crimes of Rape in the Third Degree and/or Indecent Liberties." CP at 79, 81. Accordingly, the trial court concluded that Gusman was not guilty of first degree kidnapping, attempted first degree kidnapping, or second degree kidnapping.[3]

Instead, the trial court found Gusman guilty of the lesser offense of attempted second degree kidnapping.[4] In its conclusions of law, the trial court concluded that Shuck's testimony

---

[2] The State also alleged that Gusman had acted with sexual motivation and included a firearm sentencing enhancement.

[3] The trial court also concluded that Gusman was not guilty of second degree assault and that he was not armed with a firearm at the time of the crime.

[4] In its initial oral ruling, the trial court concluded that Gusman was not guilty of attempted second degree kidnapping but that he was guilty of unlawful imprisonment. Before entering its written findings of fact and conclusions of law, the trial court reconsidered its initial oral ruling and orally

4

was credible and that the State had established that Gusman had "restrained" her without her consent when he "grabbed her such that she was unable to leave and told her to get in the truck." CP at 82. The court concluded,

> The fact that the Defendant restrained Ms. Shuck, combined with the Defendant telling Ms. Shuck to get in his truck and the circumstantial evidence that the Defendant had followed Ms. Shuck as she walked home, establishes beyond a reasonable doubt that the Defendant had the intent to commit the crime of Kidnapping and that he took a substantial step toward the commission of that crime.

CP at 82.

The trial court then discussed *State v. Billups*, 62 Wn. App. 122, 813 P.2d 149 (1991). The trial court noted that in *Billups*, the defendant took a substantial step towards kidnapping two girls when he offered them money to get into his van. The trial court reasoned that if the girls had gotten into the van, "their movements would have been restrained by their presence in the van, and that once they were restrained in the van, the defendant would have been secreting or holding them in a place where they were not likely to be found." CP at 83. The trial court found Gusman guilty of attempted second degree kidnapping.

In the judgment and sentence, the trial court did not make any finding as to whether Gusman was indigent as defined in RCW 10.101.010(3)(a) through (c). The trial court imposed a $200 criminal filing fee and $650 for court appointed attorney costs.[5]

---

ruled that Gusman was guilty of attempted second degree kidnapping. This later oral ruling is consistent with the trial court's written findings of fact and conclusions of law. Gusman does not argue that the trial court erred when it reconsidered its initial oral ruling.

[5] Gusman does not challenge the trial court's imposition of a $100 DNA collection fee, a $500 "[v]ictim assessment," or restitution. CP at 63.

Gusman appeals his conviction and the imposition of the criminal filing fee and the court appointed attorney costs.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Gusman argues that the evidence was insufficient to prove that he attempted to abduct Shuck (1) by restraining her by using or threatening to use deadly force or (2) by restraining her by attempting to secret or hold her in a place where she was not likely to be found. We hold that because Gusman restrained Shuck by attempting to secret or hold her in a place where she was not likely to be found and the trial court did not base the conviction on the use or threat to use deadly force, the evidence was sufficient to support the conviction.

### A. STANDARD OF REVIEW

"[F]ollowing a bench trial, [our] review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Homan*, 181 Wn.2d at 106.

"When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[C]ircumstantial evidence is not to be considered any less reliable than direct evidence." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And "the specific criminal intent of the

accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability." *Delmarter*, 94 Wn.2d at 638.

## B. ATTEMPTED SECOND DEGREE KIDNAPPING

"A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). A substantial step is an action that is "strongly corroborative of the actor's criminal purpose." *State v. Workman*, 90 Wn.2d 443, 452, 584 P.2d (1978).

Thus, to prove attempted second degree kidnapping, the State had to prove that Gusman took a substantial step towards intentionally abducting Shuck. RCW 9A.40.030(1). "'Abduct' means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1).

## C. RESTRAINT BY USE OR THREATENED USE OF DEADLY FORCE

Gusman first argues that the evidence is insufficient to prove that he took a substantial step to abduct Shuck because it did not establish that he attempted to restrain her by the use or threatened use of deadly force. But the trial court did not find that Gusman had restrained or attempted to restrain Shuck by the use or threatened use of deadly force. In fact, the trial court expressly concluded that Gusman had *not* used or threatened to use deadly force during his encounter with Shuck. Because the trial court's conviction was not based on the use or threat to use deadly force, Gusman is not entitled to relief on this ground.

D. RESTRAINT BY SECRETING OR HOLDING IN A PLACE NOT LIKELY TO BE FOUND

Gusman next argues that the evidence was insufficient to prove that he attempted to abduct Shuck because it does not establish that he took a substantial step "to restrain Shuck by secreting or holding her in a place where she was not likely to be found." Br. of Appellant at 10. Gusman asserts that the evidence showed only that he attempted to force Shuck into his truck and that Shuck's mere presence in a vehicle would not be sufficient to establish that he attempted to secret or hold her in a place she was not likely to be found. This argument fails.

To prove that Gusman attempted to kidnap Shuck, the State had to prove that Gusman took a substantial step toward intentionally abducting Shuck. That is, that Gusman took a substantial step toward restraining her by secreting or holding her in a place where she was not likely to be found. RCW 9A.40.010(1)(a). Restraint is defined as "restrict[ing] a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). "Restraint is 'without consent' if it is accomplished by . . . physical force." RCW 9A.40.010(6)(a).

Gusman is correct that had Shuck voluntarily entered Gusman's truck, presence in the vehicle alone would not have been sufficient to establish that Gusman took a substantial step towards restraining Shuck in a place she was not likely to be found. *State v. Dillon*, 163 Wn. App. 101, 107-09, 257 P.3d 678 (2011) (evidence that alleged victim had voluntarily been in defendant's vehicle was not sufficient to establish restraint because there was no evidence that the defendant had interfered with the alleged victim's liberty). But this case is distinguishable from *Dillon*. Here, Gusman attempted to force Shuck into his truck against her will, and this, coupled with other

circumstantial evidence, is sufficient to establish that Gusman took a substantial step towards restraining her by secreting or hiding her in a place where she was not likely to be found.

The trial court could have reasonably concluded as a matter of logical probability that having forced Shuck into his vehicle against her will, Gusman intended to restrain her, and once he got her into the truck, she was not likely to be found. The trial court's findings of fact show that on the day of the incident, Gusman was seeking out vulnerable women. Gusman had approached Nixon, another lone woman he did not know, and he had followed Shuck before stopping in front of her and approaching her. And given that Gusman was unknown to Shuck, it is unlikely that she would have been found in his truck if he had succeeded in forcing her into his truck against her will.

Because the evidence was sufficient to allow the trial court to conclude that Gusman took a substantial step toward secreting or hiding Shuck in a place she was not likely to have been found, Gusman's sufficiency of the evidence argument fails.

## II. CRIMINAL FILING FEE AND COURT APPOINTED ATTORNEY COSTS

Finally, Gusman argues that the trial court erred in imposing the criminal filing fee and court appointed attorney costs because he was indigent. The State concedes that the criminal filing fee and the court appointed attorney costs should be stricken from the judgment and sentence.

At the time of Gusman's sentencing, the trial court could not impose the criminal filing fee or court appointed attorney costs if Gusman was "indigent as defined in RCW 10.101.010(3) (a) through (c)." RCW 10.01.160(3); RCW 36.18.020(2)(h). Although nothing in our record demonstrates that the trial court found Gusman indigent under RCW 10.101.010(3)(a) through (c),

we accept the State's concession on this matter and remand for the trial court to strike the criminal filing fee and the court appointed attorney costs.

Accordingly, we affirm Gusman's conviction, but we remand to the trial court to strike the criminal filing fee and the court appointed attorney costs and to amend the judgment and sentence accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, A.C.J.

We concur:

Glasgow, J.

Cruser, J.